IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

Leon Hunt as Personal Representative of
ESTATE OF JOHN PAUL O'NEAL,
Deceased, BARBARA O'NEAL, and
JEFFREY SHAYNE GOTREAUX,

    Plaintiffs,

vs.                                                                              No. 1:18-cv-1077-KG-JFR

JUST IN TIME CARGO, INC., a California
Corporation, Individually and d/b/a JITC, and
LUCAS RICHARD FODOR, an Individual, and
JAMES YARROW, GLOBAL MAIL, INC.,
DEUTSHCE POST DHL and DHL
INTERNATIONAL GmbH,

    Defendants.

*-CONSOLIDATED WITH-*

D. Maria Schmidt as Personal Representative
of ESTATE OF JOHN PAUL O' NEAL, Deceased,

    Plaintiff,

vs.                                                                           No. 1:19-cv-1067-KG-JFR

JUST IN TIME CARGO INC, a California
Corporation, Individually and d/b/a JITC, and
LUCAS RICHARD FODOR, an Individual,

    Defendants.

## MEMORANDUM OPINION AND ORDER

    This matter is before the Court on three interrelated issues. First, Plaintiff D. Maria Schmidt, as the putative Personal Representative of the Estate of John Paul O'Neal, filed a Motion for Summary Judgment on the Issue of the Legal Father of Evan O'Neal and Evan

1

O'Neal's Status as Sole Heir of John O'Neal. (Doc. 114). Plaintiff Leon Hunt, also as the putative Personal Representative of the Estate of John Paul O'Neal, responded in opposition and Ms. Schmidt replied. (Docs. 135 & 136).

Second, the Court at a telephonic status conference on September 27, 2021, ordered further briefing on the issue of the proper plaintiff in this case. In response, Mr. Hunt filed a Motion, styled as a Motion for Partial Summary Judgment. (Doc. 148). Mr. Hunt's Motion requests dismissal of Ms. Schmidt's complaint on the grounds that Evan O'Neal is not Mr. O'Neal's son and is not a proper beneficiary of the wrongful death estate. Plaintiff Schmidt responded in opposition. (Doc. 153).

Third, and finally, Defendant Global Mail, Inc. filed a Motion to Dismiss for Lack of Personal Jurisdiction. (Doc. 98). Plaintiffs Hunt, Jeffrey Shayne Gotreaux, and Barbara O'Neal responded, and Global Mail replied. (Docs. 134 & 140).

Having reviewed the extensive briefing and applicable law, the Court: (1) grants in part Mr. Hunt's Motion for Partial Summary Judgment, dismissing the case brought by Plaintiff D. Maria Schmidt in its entirety, and denies in part as to the issues of paternity and beneficiaries; (2) denies Ms. Schmidt's Motion for Summary Judgment as moot; and (3) grants Global Mail's Motion to Dismiss, dismissing all remaining claims against it without prejudice.

I.   Background

This case arises out of a fatal truck crash. That incident produced multiple lawsuits which are now consolidated before this Court. In all, three Plaintiffs are joined. First, Plaintiff Jeffrey Shayne Gotreaux was seriously injured and brings a tort action on his own behalf. Mr. Gotreaux's driving partner, John Paul O'Neal, died because of injuries sustained. So, Barbara O'Neal sues, individually, as the surviving mother of Mr. O'Neal. Finally, the decedent's estate

2

sues for wrongful death. In that endeavor, multiple personal representatives claim to represent the estate—Leon Hunt and D. Maria Schmidt.

To briefly summarize the procedural history as this Court ascertains it: Mr. Hunt first filed suit on behalf of Mr. O'Neal's estate on August 10, 2018, in the New Mexico First Judicial District Court, against Just in Time Cargo, Inc. and Lucas Richard Fodor, in case D-101-CV-2018-02365. (Doc. 1) Ex. A at 1. In that action, he was joined by Mr. Gotreaux and Ms. O'Neal in their individual capacities. *Id.*

Mr. Hunt then motioned the state district court to be appointed as the personal representative of John Paul O'Neal's estate on August 28, 2018. *Id.* at 22. In an order dated September 11, 2018, the state court granted Mr. Hunt's Motion, appointing him the personal representative of Mr. O'Neal's estate. *Id.* at 27.

Weeks later, Plaintiff D. Maria Schmidt moved for and was also appointed as the personal representative of the Estate of John Paul O'Neal by another judge of the same state district court, this time on November 6, 2018.[1] Ms. Schmidt then filed a separate lawsuit on behalf of Mr. O'Neal's estate, also in New Mexico's First Judicial district Court and against the same Defendants, on September 18, 2019—over a year after Mr. Hunt filed his case—in case D-101-CV-2019-02468. *See Schmidt v. Just In Time Cargo Inc., et al*, 19-cv-1067 KG/JFR, Doc. 1, Ex. A.

Defendants removed the case brought by Mr. Hunt, Ms. O'Neal, and Mr. Gotreaux to this Court on November 16, 2018. (Doc. 1). One year later, after Ms. Schmidt brought her action,

---

[1] This fact was found in the state court docket, of which the Court takes judicial notice. *See Van Woudenberg v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000) ("the court is permitted to take judicial notice of . . . facts which are a matter of public record") abrogated on other grounds, *McGregor v. Gibson*, 248 F.3d 946, 955 (10th Cir. 2001).

3

the same Defendants also removed that case to this district. *Schmidt v. Just In Time Cargo Inc., et al*, 19-cv-1067 KG/JFR, Doc. 1. Finally, both federal cases were consolidated here. (Doc. 53).

Now the two putative representatives' competing motions for summary judgment, as well as Global Mail's Motion to Dismiss, are pending. The Court addresses each, in turn, below.

II. *Analysis*

  A. *The Motions for Summary Judgment and the Issue of Duplicative Personal Representatives*

This case is complicated, procedurally and legally, by the inclusion of two distinct and conflicting personal representatives of Mr. O'Neal's wrongful death estate. For the reasons explained below, the Court concludes the action brought by Ms. Schmidt must be dismissed.

In their briefing on Ms. Schmidt's Motion for Summary Judgment, the two ostensible personal representatives engage in a debate about which *beneficiaries* of the wrongful death estate are proper and ask this Court to adjudicate a paternity dispute. *See generally* (Docs. 114, 135, 136). This Court, however, concerned this dispute was not yet ripe for adjudication, ordered the parties to brief the antecedent question of who the proper plaintiff representing the Estate of Mr. O'Neal is.

> THE COURT: …It seems to me I may need additional briefing on the question on the issue of who's the plaintiff aside from what is outlined in the motion for summary judgment. And I'm inclined – I'm inclined to allow that and even require that to the extent there should be additional briefing.

September 27, 2021, Conference Transcript at 8.[2]

> THE COURT: And, Mr. Ferguson, I'm going to give you an opportunity to do that and it would be helpful to the Court. I would ask that that be filed just by opening brief on this question. You can style it as a motion for summary judgment

---

[2] The Court's citation to the transcript refers to the court reporter's original, unedited version. Any final transcript may contain some differences in page and line numbers.

4

if you'd like. And I can give you 14 days from today's date.

*Id.* at 9. Upon questioning, the Court explained that, "I'm seeing the issue on paternity being somewhat of a subpart to the larger issue, and that is who is the plaintiff that has the interest under the Wrongful Death Act." *Id.* at 12.

Mr. Hunt's answer to that order, his Motion for Partial Summary Judgment, seeks dismissal of Ms. Schmidt's wrongful death action, but does so by furthering the argument that Evan O'Neal is not Mr. O'Neal's son and therefore not entitled to benefit from any remedy won. *See generally* (Docs. 148, 154). Ms. Schmidt's response also addresses "the issue of whether Evan O'Neal is the child of John Paul O'Neal."[3] (Doc. 153) at 1.

This Court agrees that Ms. Schmidt's complaint should be dismissed but arrives at that conclusion by different reasoning. The Court determines the essential issue is not the identification of the proper beneficiaries of Mr. O'Neal's wrongful death estate. Rather, the issue is how two distinct personal representatives, taking adverse legal positions, can represent the same estate, and prosecute the same wrongful death action against the same Defendants, simultaneously.

In developing its view of the issue, the Court first references the New Mexico Wrongful Death Act (WDA). NMSA 1978, § 41–2–1 *et seq.* The WDA creates a cause of action in the event of a wrongful death "brought by and in the name of the personal representative of the deceased person." *Id.* at § 41–2–3 (2001). The Act also provides specific rules for distribution of any judgment to the deceased person's beneficiaries. *Id.*

The Court concludes that the Act does not countenance or authorize the inclusion of

---

[3] The Court considers the briefing nonresponsive to the question presented and finds the parties have waived further opportunity to brief the question who the proper personal representative is.

5

multiple, conflicting personal representatives purporting to represent only certain beneficiaries. Instead, the personal representative must litigate the wrongful death action on behalf of all beneficiaries, and upon obtaining any judgment must then distribute the proceeds.

New Mexico courts have made clear the wrongful death action is a single claim brought by a representative who represents all beneficiaries, and not multiple claims brought by the beneficiaries to whom any award may accrue. In *In re Estate of Sumler*, a case cited by both putative personal representatives in their petitions to the state court, the New Mexico Court of Appeals wrote: "[the personal representative's] duties under the Wrongful Death Act are merely to act as a nominal party for all the statutory beneficiaries in order to centralize the claims and prevent multiple and possibly contradictory lawsuits." 2003–NMCA–030, ¶ 8; *see also Sumler*, ¶ 29 (concluding "the right to bring the action is separate from the right to share in the proceeds of any recovery[.]"); *accord Estate of Lajeuenesse v. UNM Bd. of Regents*, 2013-NMCA-004, ¶ 2, *cert. quashed*, 2013-NMCERT-001 ("[T]he personal representative remains distinct from the beneficiaries as the party who must bring the wrongful death action and as the only party to the action pursuing the claims for damages that result from the injuries."); *Chavez v. Regents of Univ. of New Mexico*, 1985-NMSC-114, ¶ 8 ("The personal representative is only a nominal party who was selected by the Legislature to act as the statutory trustee for the individual statutory beneficiaries.").

Although it did not make a specific holding, the New Mexico Court of Appeals has cast doubt on the idea that naming multiple personal representatives is proper under the Act. *See Spoon v. Mata*, 2014-NMCA-115, ¶¶ 23–24. Relevant here, that court held that where potential beneficiaries are in conflict, multiple representatives are not required, reasoning that "[t]he Act's purpose in utilizing a personal representative to centralize the claims and prevent multiple and

possibly contradictory lawsuits presents a compelling reason to deny statutory beneficiaries the right to intrude on the role of an otherwise properly appointed personal representative." *Id.* at ¶ 27 (internal quotation marks and citations omitted). Similarly, that court has held that a potential beneficiary's interests are adequately represented in the wrongful death action by the personal representative even where they disagree that the beneficiary is a beneficiary. *Dominguez v. Rogers*, 1983-NMCA-135, ¶ 21.

That conclusion makes sense given that the personal representative is required to distribute any judgment obtained in strict accordance with the statute. NMSA 1978, § 41–2–3 (2001); *Spencer v. Barber*, 2013–NMSC–010, ¶ 22 ("[T]he personal representative has a nondiscretionary duty to distribute the wrongful death proceeds in the ratio prescribed by the [Act]."); *Baca v. Baca*, 1963-NMSC-043, ¶ 19 ("[T]he personal representative who makes a recovery under the Act, … serves as a trustee, a 'statutory trustee', for discoverable and identifiable beneficiaries in the line of named kinship or descent.").

Indeed, the personal representative is liable to the beneficiaries. *Spencer v. Barber*, 2013–NMSC–010, ¶ 8 ("The personal representative has a duty to act with reasonable care regarding the interests of the statutory beneficiaries[.]"). In *Dominguez*, the New Mexico Court of Appeals explained that where a beneficiary remains adverse to the representative on the issue of disbursement, the beneficiary can (1) bring "a separate action for declaratory judgment and other appropriate equitable relief" or (2) bring "a separate suit against the personal representative as the statutory trustee to recover his claimed share of the judgment." *Dominguez*, 1983-NMCA-135, ¶ 19.

Finally, the determination of beneficiaries and the responsibility of disbursement arise *after* litigating the underlying case for damages. The Tenth Circuit has recognized that "the New

Mexico Wrongful Death Act does not recognize the existence or number of statutory beneficiaries as an element of damages and…it is not necessary for recovery to establish that a statutory beneficiary exists." *Harris v. Illinois-California Exp., Inc.*, 687 F.2d 1361, 1369 (10th Cir. 1982).

For these reasons, this Court concludes that permitting multiple, adverse personal representatives to represent the interests of discreet beneficiaries—and to adjudicate the propriety of certain beneficiaries before determining liability and damages—contradicts the plain meaning of the New Mexico Wrongful Death Act and the state courts' interpretation of it. The Court, then, is presented the issue of how to determine which is the proper representative of the estate where the state court has named two.[4] The state statute is not the only issue, however.

The problem of duplicative complaints, which arises under federal procedural law, is also implicated here. Filing duplicative complaints, or claim splitting, has been defined as maintaining "two actions on the same subject in the same court, against the same defendant at the same time." *Katz v. Gerardi*, 655 F.3d 1212, 1217 (10th Cir. 2011). The Tenth Circuit has held that "[t]he rule against claim-splitting requires a plaintiff to assert all of its causes of action arising from a common set of facts in one lawsuit." *Wyles v. Sussman*, 661 Fed. Appx. 548, 550 (10th Cir. 2016).

Claim splitting, like its cousin *res judicata*, is concerned with "promoting judicial economy and shielding parties from vexatious concurrent or duplicative litigation." *Katz*, 655

---

[4] Because state law does not provide a clear answer to the issue of multiple representatives being named, this Court's ability to remedy the problem may have been limited by the *Erie* Doctrine under other circumstances. *See, e.g. Hill v. J.B. Hunt Transp., Inc.*, 815 F.3d 651, 667 (10th Cir. 2016) ("Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law."). The Court, however, need not decide the issue on state law grounds. Instead, the Court's authority to manage its docket to prevent claim splitting arises under federal law.

F.3d at 1218. "[T]he test for claim splitting is not whether there is finality of judgment, but whether the first suit, assuming it were final, would preclude the second suit." *Id.*

District courts have discretion to control their dockets by dismissing duplicative cases. *Id.* at 1217 (10th Cir. 2011) (citing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) ("As between federal district courts ... though no precise rule has evolved, the general principle is to avoid duplicative litigation.")); *Wyles*, 661 Fed. Appx. at 550 ("[T]he claim-splitting rule exists to allow district courts to manage their docket and dispense with duplicative litigation."). In *Katz*, for example, the Tenth Circuit upheld a trial court's dismissal of the plaintiff's complaint where the plaintiff previously filed related claims that were pending in the same federal court against the same defendants. *Id.* at 1217–1219.

The Court notes here that consolidation does not merge separate suits into one cause of action. *Harris*, 687 F.2d at 1368. Accordingly, consolidation does not relieve the court or the parties of the burden of the rule against claim splitting. *See, e.g., Walton v. Eaton Corporation*, 563 F.2d 66 (6th Cir. 1977) (applying claim-splitting principle to two consolidated cases).

In this case, a single entity—the estate of John Paul O'Neal—has brought suit twice, against the same Defendants, for the same incident. The Estate brought suit first via personal representative Leon Hunt and, a year later, through personal representative D. Maria Schmidt. Those two complaints allege the same operative facts and further the same legal theories all arising out of the same truck crash and seeking the same damages. Certainly, the two complaints meet the *Katz* test—were the *Hunt* case to proceed to judgment, it would preclude the identical *Schmidt* suit from proceeding. Adding to the problem, the two duplicative representatives are currently adverse on certain legal positions related to identification of and distribution to beneficiaries. Practically, the wrongful death estate, defendants, and Court all have an interest in

9

knowing which representative of the Estate is prosecuting the case and has the authority to make litigation decisions, such as agreeing to a settlement.

So, exercising its discretion to control its docket and dismiss duplicative complaints, this Court dismisses the *Schmidt* case in its entirety. Accordingly, Schmidt's pending Motion for Summary Judgment (Doc. 114) is denied as moot. Finally, Hunt's Motion for Partial Summary Judgment (Doc. 148) is granted to the extent the *Schmidt* case is dismissed and is otherwise denied without prejudice because the issue of identifying the appropriate beneficiaries is not yet ripe for decision, and would give rise to a different cause of action under the WDA.

B. *Global Mail's Motion to Dismiss*

Global Mail, Inc. has a pending Motion to Dismiss for Lack of Personal Jurisdiction. (Doc. 98). In accordance with the dismissal of the *Schmidt* case, the Court finds Global Mail's Motion moot as it relates to claims brought by Ms. Schmidt. The Court grants the Motion as it relates to the *Hunt* case and dismisses all remaining claims against Global Mail without prejudice.

Plaintiffs bear the burden of establishing personal jurisdiction over a defendant. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). Plaintiffs Hunt, Gotreaux, and O'Neal (Plaintiffs) make three arguments against dismissing Global Mail. First, Plaintiffs argue that, procedurally, Global Mail waived its right to claim a lack of personal jurisdiction under the Federal Rules of Civil Procedure. Second, they contend that, substantively, Global Mail waived its right by participating in this litigation. And third, Plaintiffs argue that Global Mail has sufficient minimum contacts to be subject to personal jurisdiction in New Mexico. Global Mail takes the opposite position on each issue. The Court addresses each in turn.

10

### 1. *Procedural Waiver*

Rule 12(h) provides that a defendant waives lack of personal jurisdiction as a defense if it is not included in an answer or pre-answer motion. Fed. R. Civ. P. 12(h)(1). Plaintiffs argue that "Global Mail failed to raise its personal jurisdiction challenge in its first responsive pleading or by pre-answer motion" and therefore waived the defense. (Doc. 134) at 9. Global Mail counters that, even if it did not name personal jurisdiction as an affirmative defense, it denied Plaintiffs' jurisdictional allegation which preserves the availability of the defense. (Doc. 140) at 4–5.

This District has previously held that denying a jurisdictional allegation is sufficient to preserve a personal jurisdiction defense. *See Fabara v. GoFit, LLC*, 308 F.R.D. 380, 397 (D.N.M. 2015), *as amended* (Aug. 20, 2015); *Ramos v. Foam Am., Inc.*, No. CV 15-980 CG/KRS, 2018 WL 987243, at *4 (D.N.M. Feb. 20, 2018). In *Fabara*, Judge Browning conducted an extensive treatment of the issue and concluded as much for three reasons. First, lack of personal jurisdiction is not an affirmative defense under the Federal Rules of Civil Procedure and other authorities. *Fabara*, 308 F.R.D at 399. Second, courts that have considered the issue agree that denying jurisdiction is sufficient to preserve the defense. *Id.* (discussing cases). Finally, "forcing defendants to plead lack of personal jurisdiction as an affirmative defense would elevate form over substance and contravene the federal rules' liberal pleading philosophy." *Id.* at 400. Accordingly, because the defendant in *Fabara* denied jurisdiction in its answer, the court held the defendant preserved the defense under Rule 12(h). *Id.*

Here, as in *Fabara*, Global Mail's answer to the *Hunt* Complaint did not list personal jurisdiction as an affirmative defense but did deny the Plaintiffs' jurisdictional allegation. (Doc. 64) at ¶ 12. And while neither of the following preserves the personal jurisdiction defense, the Court notes that Global Mail included personal jurisdiction as an affirmative defense in its

11

answer to the *Schmidt* Complaint, and amended its answer to the *Hunt* Complaint to do the same. (Doc. 75) at 19, (Doc. 82) at 17. Only by elevating technical form over substance could this Court find Global Mail waived personal jurisdiction. The Court concludes, therefore, that Global Mail adequately preserved its personal jurisdiction defense in its answer.

        2.     *Substantive Waiver*

Second, Plaintiffs argue that Global Mail waived its personal jurisdiction defense by participating in this litigation. Specifically, Plaintiffs contend that Global Mail forfeited its defense because it "filed a notice of appearance, Original Answer, and exchanged discovery months before raising the issue of personal jurisdiction," including "attending depositions and designating experts." (Doc. 134) at 10.

Actively participating in a case implicitly waives a jurisdictional objection when participation "manifests an intent to submit to the court's jurisdiction." *Ramos*, 2018 WL 987243, at *5 (quoting *Yeldell v. Tutt*, 913 F.2d 533, 539 (8th Cir. 1990)). How long a defendant takes to file a motion to dismiss is a factor, but "the passage of time alone is generally not sufficient to indicate forfeiture." *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 61 (2nd Cir. 1999). Courts have placed particular weight on a defendant's request for relief on the merits. *See Bel-Rey Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 443-444 (finding request for relief on the merits where defendant moved for summary judgment on its counterclaim); *Continental Bank, N.A. v. Meyer*, 10 F.3d 1293, 1296-97 (7th Cir. 1993) (same, where defendants filed and defended motions related to counterclaims); *Yeldell*, 913 F.2d 533 at 539 (same, where defendant did not assert lack of personal jurisdiction until after trial); *cf. Thompson v. United States*, 312 F.2d 516, 519-20 (10th Cir. 1962) (holding appellant waived improper venue defense by filing a motion for summary judgment).

In this case, Global Mail has participated in some discovery, which weighs in favor of finding waiver. But the Court is convinced by Global Mail's explanation that it only participated in discovery to the extent it was related to jurisdiction and to the extent it felt compelled to comply with the Court's scheduling orders. (Doc. 140) at 6–7. Furthermore, Global Mail has not filed any counterclaims or requested relief on the merits.

More persuasive still, Global Mail has maintained and reiterated its objection to jurisdiction at every opportunity. In its answer to the *Hunt* Complaint, on March 6, 2020, it denied the jurisdictional allegations. (Doc. 64). Next, in its answer to the *Schmidt* Complaint, on April 21, 2020, it denied jurisdictional allegations and claimed a lack of personal jurisdiction as an affirmative defense. (Doc. 75). It then amended its answer to the *Hunt* Complaint, with leave of court, to include personal jurisdiction as an affirmative defense on June 10, 2020. (Doc. 82). After that, its next filing was its Motion to Dismiss on November 4, 2020. (Doc. 98). To put that in context, the time between its first answer and its Motion to Dismiss was approximately eight months, and the Motion was filed almost a year before a trial date had even been set. *Cf. Ramos*, 2018 WL 987243, at *5–6 (finding a delay of over a year between asserting defense and filing Motion to Dismiss not waiver of defense where filed well before trial date was set). Given this conduct, the Court is persuaded that Global Mail did not manifest an intent to submit to its jurisdiction. Global Mail did not waive its personal jurisdiction defense by its conduct.

        3.    *Sufficient Minimum Contacts*

Finally, given Global Mail did not waive its personal jurisdiction defense, the Court must determine whether personal jurisdiction is appropriate. When a court does not have personal jurisdiction over defendants, it must dismiss the claims against those defendants without

13

prejudice. *Albert v. Smith's Food & Drug Centers, Inc.*, 356 F.3d 1242, 1249 (10th Cir. 2004).

Because New Mexico's long-arm statute "extends the jurisdictional reach of New Mexico courts as far as constitutionally permissible," *United Nuclear Corp. v. General Atomic Co.*, 1977-NMSC-079, ¶ 2, the Court need only analyze whether due process permits personal jurisdiction, *see e.g.*, *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011). Due process requires proving two elements. First, that the defendant has sufficient "minimum contacts" with the forum state such that the defendant "should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473-76 (1985); *Tercero v. Roman Catholic Diocese of Norwich, Connecticut*, 2002-NMSC-018, ¶ 7. And second, that asserting jurisdiction would not offend traditional notions of fair play and substantial justice. *See, e.g.*, *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945); *see also Sproul v Rob & Charlies, Inc.*, 2013-NMCA-072, ¶ 9.

The due process analysis depends in part on whether the jurisdiction alleged is "general" or "specific." Under general jurisdiction, a court may exercise personal jurisdiction over a defendant even where the action is unrelated to the defendant's contacts with the forum state. *See, e.g.*, *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). Such breadth comes with a limit: "Only a select 'set of affiliations with a forum' will expose a defendant to such sweeping jurisdiction." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). The Supreme Court has said that a court may properly assert "general jurisdiction" where the defendant's contacts with the state are so "continuous and systematic to render them essentially at home in the forum State." *Daimler*, 571 U.S. at 127; *see also Trujillo v. Williams*, 465 F.3d 1210, 1218 n. 7 (10th Cir. 2006). Regarding a corporation, its state of incorporation and

principal place of business are the paradigmatic bases for general jurisdiction. *Daimler*, 571 U.S. at 137.[5]

Alternatively, the minimum contacts necessary for specific personal jurisdiction may be established where the defendant is not at home in the state, but where (1) "the defendant has 'purposefully directed' its activities toward the forum jurisdiction" and (2) where the underlying injuries "arise out of or relate to the defendant's contacts with the forum." *Trujillo*, 465 F.3d at 1218 (10th Cir. 2006) (quoting *Burger King*, 471 U.S. at 472). The Supreme Court has recently clarified that the defendant must "purposefully avail itself of the privilege of conducting business in the forum State." *Ford Motor Co.*, 141 S. Ct. at 1024. The contacts with the forum state must be the defendant's own deliberate choice, which can be shown, for example, by "exploiting a market in the forum State or entering a contractual relationship centered there." *Id.* at 1025 (internal modifications and quotations omitted).

To repeat, plaintiffs bear the burden of establishing personal jurisdiction over a defendant. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). Plaintiffs here argue that Global Mail is subject to personal jurisdiction by virtue of its sufficient minimum contacts with the state of New Mexico but does not articulate whether general or specific jurisdiction is appropriate. (Doc. 134). In support of their position, Plaintiffs specifically contend that Global Mail contracts with customers to deliver freight to New Mexico, creating a continuing relationship and obligation with citizens of the state. *Id.* at 13. Indeed, Global Mail "facilitates the transportation of goods into New Mexico 302 days a year." *Id.* at 15.

---

[5] Although Global Mail was not registered to do business in New Mexico, the Court here notes that while New Mexico previously authorized consent to general jurisdiction by registration to do business, *Wener v. Wal-Mart Stores, Inc.*, 1993-NMCA-112, that is no longer the law in New Mexico, *Chavez v. Bridgestone Americas Tire Operations, LLC*, No. S-1-SC-37489, 2021 WL 5294978 (N.M. Nov. 15, 2021) (slip opinion).

15

Additionally, Plaintiffs argue that Global Mail incurs significant expense contracting with the United States Postal Service to make deliveries across the U.S., including in New Mexico. *Id.* at 14. Plaintiffs finally argue that Global Mail creates "transportation lanes" and "routing guides" which require its transportation partners to make scheduled and consistent trips to and through New Mexico. *Id.* at 3, 13.

The Court concludes Plaintiffs have not carried their burden to prove either general or specific personal jurisdiction in this case.[6] The Court finds, first, that Global Mail is not "at home" in New Mexico to an extent justifying general jurisdiction. Global Mail is described by Plaintiffs as a "nationwide e-commerce parcel delivery operation," (Doc. 134) at 15, and by itself as a "load consolidator," (Doc. 98) at 3. Global Mail's business model appears to be essentially that of a broker and logistics company—contracting with online sellers to deliver goods to consumers and then contracting again with transportation companies and the USPS to execute the delivery. (Doc. 134) at 2–3; (Doc. 98) at 3–4..

Global Mail is incorporated in Ohio and keeps its principal place of business in Florida.

---

[6] When a district court rules on a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in this case, the plaintiff need only make a *prima facie* showing of personal jurisdiction to defeat the motion. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998) (citing *Kuenzle v. HTM Sport–Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir.1996)). The plaintiff may make this *prima facie* showing by demonstrating, via affidavit or other written materials, facts that—if true—would support jurisdiction over the defendant. *Id.*

The Court notes Plaintiffs did not dispute Global Mail's recitation of the facts. *See* (Doc. 134) at 2–4. Instead, Plaintiffs provided their own "Background Facts" in response to Defendants' Motion to Dismiss, (Doc. 98). *See id.* Therefore, in the absence of any objection, the Court may adopt Global Mail's facts as undisputed for purposes of its Motion (Doc. 98). *See* D.N.M. LR-Civ. 56.1(b) (instructing that "[a]ll material facts set forth in the [movant's] Memorandum will be deemed undisputed unless specifically controverted"). The Court nonetheless cites to Plaintiffs' recitation of the facts for the following reasons: (1) to avoid deciding a dispositive issue on technicality, especially where Plaintiff bears the burden, and (2) because often, Plaintiffs' facts are in accord with Global Mail's. Where facts are in dispute, the Court notes it.

(Doc. 98) at 3. It is not registered to do business in New Mexico, has no agent for service of process here, keeps no physical business presence here, and does not advertise here. *Id.* Even if Global Mail regularly contracts for deliveries in New Mexico, the Court concludes that it does not have the type of "continuous and systematic" contacts which would make it "essentially at home" in New Mexico. Global Mail brokers deliveries nationwide. The Supreme Court has explained that where a corporation operates in many states, it "can scarcely be deemed at home in all of them." *Daimler AG*, 571 U.S. at 139 n. 20.

The Court concludes, second, that specific jurisdiction fails because the crash did not arise out of business activities purposefully directed at New Mexico by Global Mail. The truck involved in the collision from which this action arises was operated by Just-In-Time-Cargo, Inc. (JITC) and was transporting goods from Compton, California, to Secaucus, New Jersey. (Doc. 134) at 3. That is, the shipment was travelling through New Mexico but was not specifically directed at New Mexico or based on a contractual obligation to any of New Mexico's citizens.

Whether or not Global Mail had any control over the route of the cargo or intentionally directed the truck through New Mexico is in dispute.[7] *See TH Agric. & Nutrition, LLC v. Ace Eur. Grp. Ltd.*, 488 F.3d 1282, 1291 (10th Cir. 2007) ("We ask whether the plaintiff's claim arises out of or results from actions by the defendant *himself* that create a substantial connection with the forum state.") (internal quotations and citations omitted). Plaintiffs allege that Global Mail assigns "transportation lanes" so that its transportation partners "develop a routine route of

---

[7] Notwithstanding Plaintiffs failure to specifically dispute Global Mail's allegations, *see* Note 4, the Court notes factual disputes must be resolved in plaintiffs' favor when the parties present conflicting evidence. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). Here, however, the parties do not present conflicting evidence, but instead construe the same deposition evidence to support opposite conclusions. This Court, therefore, reviews the claims and the evidence without a presumption in either direction.

17

travel." (Doc. 134) at 3 (citing Ex. 2, 32:5–33:22). Global Mail, on the other hand, clarifies that it "does not proscribe what routes its carriers take, and it did not direct JITC… to drive through New Mexico." (Doc. 98) at 8. Global Mail specifically counters Plaintiffs by citing to the same deposition of DHL Vice President of Operations for the Americas Scott Ashbaugh, pointing out that he specifically denied that Global Mail recommends routes to its contract carriers. (Doc. 140) at 3 (citing Doc. 134, Ex. 2, 32:8–22, 33:22–25).

This Court, based on the evidence presented in the deposition exhibit, finds that Global Mail did not direct the route taken by the truck operated by JITC. The Court, therefore, concludes that Global Mail, by merely brokering this specific freight delivery from California to New Jersey, did not purposefully direct any activities towards or conduct business in New Mexico. Global Mail thus lacks the sufficient minimum contacts necessary to have availed itself of New Mexico's laws or to reasonably anticipate being haled into this Court. To conclude otherwise would require the Court to hold that any upstream entity in the logistics chain is subject to personal jurisdiction in any state through which their contracted freight happens to pass, even though the upstream entity did not control the route taken. A business brokering freight which passively travels through countless states can scarcely be deemed to be purposefully conducting business in all of them.

Finally, though it need not do so, this Court concludes it would violate fair play and substantial justice to assert personal jurisdiction over Global Mail. The Tenth Circuit considers the following five factors in deciding whether the exercise of jurisdiction would be fair:

> (1) the burden on the defendant, (2) the forum state's interests in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states or foreign nations in furthering fundamental social policies.

*Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1167 (10th Cir. 2011). That Global Mail lacks sufficient minimum contacts is an important consideration. The "reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *TH Agric. & Nutrition, LLC*, 488 F. 1282 at 1292 (internal quotations and alterations omitted).

Here, the first factor weighs against jurisdiction. Global Mail will suffer a large burden defending itself in New Mexico simply for having contracted to ship cargo out of California. Global Mail, as discussed, is not registered in New Mexico, has no employees or physical presence in New Mexico, and was not shipping goods to New Mexico. The remaining factors, which all focus on the interests of the plaintiff and forum, do not weigh strongly in favor of asserting jurisdiction because even without Global Mail, the Plaintiffs' case against the remaining defendants will continue and this forum will adjudicate the case. To the extent New Mexico's interest in regulating its roadways is implicated, that interest is satisfied by maintaining jurisdiction over the driver and trucking company.

Given the weakness of Global Mail's relationship with New Mexico and this Court's finding that Global Mail lacks sufficient minimum contacts with the state, the Court concludes that asserting jurisdiction over Global Mail would offend traditional notions of fair play and substantial justice, and would thus be unreasonable.

IT IS THEREFORE ORDERED THAT:

1. The case brought by D. Maria Schmidt on behalf of the Estate of John Paul O'Neal in *Schmidt v. Just In Time Cargo Inc., et al*, 19-cv-1067 KG/JFR, and consolidated herein, (Doc. 53), is hereby dismissed without prejudice for being duplicative;

2. Ms. Schmidt's Motion for Summary Judgment (Doc. 114) is denied as moot;

3. Mr. Hunt's Motion for Partial Summary Judgment is granted in part and denied in part. It is granted to the extent the *Schmidt* case is dismissed, but denied as to any determination of the appropriate beneficiaries, as that issue is not yet ripe;

4. Global Mail, Inc's Motion to Dismiss (Doc. 98) is granted; and

5. All remaining claims against Global Mail, Inc. are dismissed without prejudice for lack of personal jurisdiction.

_____
UNITED STATES DISTRICT JUDGE